Yes, good morning. Nadia Sarkis on behalf of Corona Clay Company. I'd like to reserve five minutes for rebuttal. All right. So I realize there's a lot of different moving parts in this appeal and I plan to primarily focus on the two SACIT related issues because if those result in reversal then we don't necessarily need to reach the fee and penalty issues. That said, I'm happy to answer any kind of questions or lingering issues the court has with regard to those other issues. Can you move the microphones a little bit closer? Thank you. Okay. Is that better? Yes. Okay. So in terms of the SACIT related issues, I think there's one that's probably a little easier than the other. I'm going to dig into the harder one first, which is the question of subject matter jurisdiction. And the issue before the court is whether a statutory limitation goes to the court's power to hear capacity to decide a case. And we think that in this instance, for a citizen suit, the WOTUS definition does go to the court's power to hear the case and there's a couple of reasons for that. And then let me use the example of a puddle. So I just think it's a sort of clear example. Let's say someone wants to bring a citizen suit over a puddle. We think that that sort of goes to a court's Article III powers to decide the case because a citizen suit over a puddle, the claim wouldn't be redressable. This court wouldn't have the power to issue remedies over a water body like that. I'm struggling with the argument that you're making on this point because I don't understand why that wouldn't be. I agree with you that if it's a puddle, we're not going to have the ability to give relief under the Clean Water Act, but that's because they're not going to be able to prove a claim because it's an element of, perhaps it's an element of a claim. We'll get to that perhaps later. But I don't understand why it undermines the court's power to act and to decide whether there's a claim here that then would afford granting relief. So I would agree with the point that the court has the power to decide whether something qualifies as a water in the United States. But once that decision, that goes to the court. If the court says no, then that's the end of the line because then there would be no power to issue a remedy. Sure, but that doesn't need to be jurisdictional to be true. Because if you make it subject matter jurisdiction, then aren't you going to put on the court an affirmative obligation to root around and decide whether something is or isn't a water of the United States, even if it's not challenged by the parties? And if that's true, that seems quite difficult because we would need a record developed on that point. And if the parties aren't challenging it, then we're going to be in a position of having to affirmatively, in the first instance, raise an issue of sua sponte that we can't well address. So I think the Steele Co. case talks about this, specifically Justice Stevens' concurrence. It talks about this sort of issue of statutory standing and Article III jurisdiction being closely related. And I agree that they are closely related in many respects, but there's another reason why we think there's no subject matter jurisdiction here as well. And Steele Co. actually talks about this in the majority opinion. It says that a federal claim is wholly implausible, it's insubstantial, or it's foreclosed by Supreme Court precedent, that there's no subject matter jurisdiction. And we think that applies here as well. And then also, the Gwaltney case, we think speaks to this issue, that if there is, citizen suits are intended to sort of supplement and not supplant a federal agency's jurisdiction. And if EPA or the Army Corps of Engineers does not have jurisdiction to enforce the Clean Water Act with regard to a body of water, then neither does a private citizen. But this question of whether it's a question of statutory standing or it's a question of Article III standing, it reaches the same result in this case, and it requires reversal. Because there was a change in the law that sort of fundamentally changed what it means to be a water of the United States, and the district court did not consider that. And if it had, it would have required a reversal of the judgment. So we think whatever way this court sort of construes that issue as statutory standing versus Article III standing, you get to the same place. And that sort of leads me to what I think is the kind of easier Sackett-related issue, which is that at a minimum, Coronaclay was entitled to a new trial. Sackett changed what it means to be a water of the United States, and Coronaclay should get the opportunity to defend against the plaintiff's claims under the law as redefined by the Supreme Court. And plaintiffs should know this because this is... What do we do with the factual concession in the record below? What factual concession? That it is a water of the United States, that the creek is water of the United States. Right. So that was under the law as it existed at the time, which was a significant nexus standard that was controlling in the Ninth Circuit. And so as a result, there was an undisputed jury instruction that the water, that Temescal Creek was a water of the United States, because it would have been futile under the law that was controlling at the time. But the concession wasn't just that legal conclusion, I guess. The concession was also factual in the sense of that the creek is a tributary of the river, and that the river is navigable. And even under the test that Sackett ultimately adopts, those facts go to, it's a water of the United States. So I don't think that's... Respectfully, I'm not sure that's correct in terms of the... So at the time, anything that was a tributary would automatically qualify as a water of the United States under the significant nexus test. But ChronoClaim did dispute that Temescal Creek was a relatively permanent stream. And that was also litigated in the context of a summary judgment motion. And what was decided in that motion didn't bind the parties at trial. There was no Rule 56G finding. All that's decided in the context of summary judgment is that the case goes forward to trial, that there are material, factual disputes. Well, if a party concedes a fact at some course of the litigation, why aren't they bound by that concession throughout the course of the litigation? I mean, isn't that sort of judicial admission territory? I don't think ChronoClaim ever admitted that Temescal Creek is a relatively permanent stream. And so that's what they would have had to have conceded in order for that to have... What was the concession and the request for admission specifically? I thought that the request for admission was that Temescal Creek is a tributary of the Santa Ana River. There was a request for admission. That wasn't admitted at trial. But that also doesn't connote that the water was a relatively permanent stream. It just means there's sort of... To the extent that it flows, it's an ephemeral stream. On the very rare occasions that it flows, it is a tributary. That doesn't mean that it's a relatively permanent stream. So maybe explain to us why it seems like pre-Sackett, Ninth Circuit was very clear in Moses that a tributary to a navigable stream is a lotus, period. That was the rule. Would you agree with that? Let's just assume that you conceded factually that it was a tributary to Santa Ana River, which I think probably you still conceded, right? So before that was made it a lotus, A, why does that not make it a lotus post-Sackett? All right? So I need you to address that. And the other thing I need you to address is that it seems to me the district court understood that that does not make it a lotus post-Sackett. So you have the district court on your side on that because the district court post-Sackett did not come back and go, oh, it's tributary, that's all you need. The district court does come back and say, oh, it's all been about the Raponese plurality the whole time. That's what they argued the whole time and that's what my analysis was, Raponese plurality. Why is the district court wrong about that? So those are the two questions I need answered. Right. Okay. So I think from throughout the lawsuit, it's correct to say that the plaintiffs were invoking the significant nexus standard, not the Raponese plurality. That's what they invoked in their complaint. And that's what's in their briefing as well. I think we sort of set forth that history in our briefs. And Sackett did fundamentally change the law for what streams would qualify as lotus. And I think that's reflected in the way that the rules changed after the Sackett decision came out. So is your position that the district court was just wrong, that their argument the whole time was Raponese plurality and that the district court's basis for accepting it was the Raponese plurality? I do think that's incorrect. And I think we sort of laid out that history in our briefs as to why that's not correct and where it is that plaintiffs were invoking the significant nexus standard. What it is that the district court at the summary judgment stage was just citing the old pre-Sackett rule that as long as it's a tributary, then that's automatically lotus. Now does it matter if, assume for a second that I agree with you that they did not argue Raponese plurality and I'm really struggling to find Raponese plurality alone. And I'm really struggling to find where the district court ever relied on Raponese plurality alone. If they did argue the Raponese plurality plus tributary, plus significant in Kennedy's, Justice Kennedy's significant nexus test, and if the district court's not clear what it relied on until later, you know, later in response to your motion for your last motion, and it said, oh no, it was Raponese plurality the whole time. What do I do with that? In other words, if Raponese plurality is in there but it's not the only argument, how does that affect your argument? Right, so I mean I think there's a lot of district courts that were faced with a similar situation as this one. Where Sackett came out, there was an open question then as to, you know, whether there was a viable Clean Water Act to be had or to go forward. And the court looked at that anew under the sort of new rubric defined by Sackett. And in many of those cases, including cases involving these kind of intermittent or ephemeral streams, that was the end of the line. There was a defense judgment. In some cases, there was a case, I think, in the Northern District of California that involved tidal waters. Tidal waters was not really affected by Sackett and it didn't have that sort of impact. And there was another case where it involved a stream that only dried up for, I think, a month or two in the entire year. The court, you know, that case went forward. But what the court had to do was grapple with the way in which the law had changed. And it didn't do that, and we think that that was error. So I hope that answers your question. Did I answer it? Well, I'm just thinking if the plaintiffs threw the kitchen sink in their pleadings, I'm not even sure they did in their complaint, but in their motion for their second motion for summary judgment and said, it's a water to the United States under everything. What do we do? And then what do we do with that? It included the riponus plurality, but also included tributary of a navigable water and included substantial nexus or significant nexus, whichever it is, Justice Kennedy's concurrent. If they did all of that, then what do we do with that as far as you having conceded something? Right. So the district court faulted Coronaclay for not kind of throwing the kitchen sink in response and called that a waiver. But I don't think that it is, for a couple of reasons. First of all, Coronaclay did dispute that it was a relatively permanent stream. So just as a factual premise, I think the court's reasoning is flawed. But Coronaclay also wasn't required to make an argument that would have been futile at the time. At the time, the water qualified as a WOTUS under controlling Ninth Circuit law. It didn't have to sort of say, oh yeah, and by the way, it wouldn't qualify under this more stringent test that doesn't apply in the Ninth Circuit. So I think that that sort of stretches the waiver doctrine beyond where it fairly goes. And I think we cited to several cases that kind of talk about the impact of intervening change in law, including when the parties didn't dispute a material fact, before the law had changed, because there was no way to anticipate that. I guess I'll ask a procedural question along these lines. I mean, you contend that a change in law gets you a new trial in this kind of a context and under Rule 59. The authority that you cite for that proposition, I don't think is in this context, and I don't think it supports the proposition. So I'm struggling with what's your best authority that that is a basis for granting a new trial? Because certainly that would undermine the idea of finality, if every time the law changes, we have to undo trials. Yeah. I mean, really, I think the best case for that is one that is in the history of this very case. In Corona Clay 1, there was a judgment after a jury trial, and the Supreme Court came out with a county of Maui decision. That decision impacted the prior summary judgment order. It impacted an undisputed jury instruction. And this court said that in those circumstances, that the plaintiffs got to sort of press their claims in the context of, you know, the new sort of understanding of the Clean Water Act. Now the shoe's on the other foot, and the same thing is true here. I mean, I think there's also, I'll just say to a Supreme Court. I think in that context, I mean, don't we have a procedural difference in that we were on direct appeal the first time and not on a motion for a new trial? I think there was also a Rule 59 motion in that case as well. So I don't check that. But there's also just when, you know, the Supreme Court applies a rule of federal law, and that rule is controlling, it has to be given full retroactive effect. Well, what makes this case hard, and I think in this questioning, is I don't know that anybody would be struggling if the Supreme Court had issued a rule that changed the law. I mean, and it clearly meant you won. Because then it would seem incredibly unjust to have you in that interstitial time between when you've got an adverse trial, and then the Supreme Court issues something that says, no, we can't, you know, this racist law or something can't be applied, that we'd be like, well, too bad. There's been a change in law. You still got to pay your $5 million judgment against you. What makes this case hard is that it's not all the way to where you clearly win. What the Supreme Court seems to have changed is something where it could, it makes a fact that before you couldn't contest into something that seems clearly very contestable now. And so I kind of, I agree there's not really a case law on that, but I don't know what to do with that. It seems like if it went a little bit further, you clearly would win. So if all it does is undermines a factual basis for the jury trial, I agree that it's just hard to know what to do with that. I'm not sure how that fits into our rules, but it's hard to think that you just, you know, what to do with it. I don't know. Yeah, I mean, I think that, given the opportunity to sort of present the facts on this stream, it is clear as day that we would win. This is, it's not a close call here. It's a vast overstatement to call this a creek or a stream. It's a wash that sort of flows on very rare occasions. I noticed the district judge started referring to it as a wash, and then later on it was referring to it as a creek. Right. I mean, did something change in the nature of it during the years of this? I don't know the answer to that, but I think it's a, I would call it a misnomer to call it a creek, but I think the terms have been, I've tried to tease that out myself and try to understand the difference. It seems to matter on the Rapallo's plurality and putting 0-5 because somehow the Supreme Court thinks we all can tell very starkly the difference between a creek and a wash. Right. I also don't know what to do with your factual concessions on that point, because I'm looking at them. So the request for admission, Temescal Creek is a permanent longstanding water feature spanning the valley from the lake to the river. The response from your client was disputed as incomplete, as the assertion does not pertain to any particular part of the creek, and then disputed as immaterial. It doesn't really go towards, it's never, you know, they're sort of technical disputations and not not getting to the idea that the creek is permanent and longstanding. So what do I do with that? I mean, if you had said, you know, disputed factually incorrect, then I would understand the position that you're not bound to any degree of whether this is permanent or not, that's not what the objection was. Well, I understand your point. I mean, it was disputed, and I also think that I would just go back to the point that what was decided at the summary judgment stage isn't binding at trial. And I disagree with you entirely on that. I think if you make a factual concession, that's a factual concession in the case. Unless you can point me to some authority that says you can come out, you can back away from factual concessions. I don't think that's true. I mean, isn't that what the whole Rule 56G procedural mechanism is for? If you want to make something binding, you have to go through a procedural mechanism in order to make it binding. Otherwise, it's not. And it wasn't conceded either. So I understand your point that it's kind of this technicality, but it's also the fundamental sort of issue here is that there was no reasonable... It wasn't rational or needed to dispute something that wasn't a controlling test under the time. In retrospect, yes, it would have been a good idea to anticipate that the law would have changed and disputed that. But we didn't have reason to do that, and there was no way to know that. And so to say that we are now bound to a judgment for millions of dollars over something that is plainly not a water of the United States and not have the opportunity to sort of present that and have that adjudicated now that the law has changed is... We think it's fundamentally unjust and not warranted under controlling authorities. Thank you, counsel. You're over time. Good morning, Your Honors. Christopher Sproul for Plaintiffs' Appellee, Cross Appellant, Inland Empire Waterkeeper, and Orange County Coastkeeper. May it please the Court. I would like to reserve three minutes of my time because we're also cross appellants, so I would like the time on reply to address the issues that we have raised in our cross appeal. First of all, I would... One moment. It's important at the outset to note the setting of this case, that Corona Clay seeks reversal of Judge Carter or the District Court judgment and yet a third trial, in this case it's now seven and a half years old, on Corona Clay's challenge to two rulings from Judge Carter. The dismissal or the denial, excuse me, of Corona's Rule 12b6, 12b1 motion to dismiss and Corona Clay's Rule 59a motion for new trial. Under the Federal Rules of Civil Procedure, Judge Carter's rulings on those two motions was correct and this Court should therefore affirm. At the heart of those motions is the question whether Sackett changed the law for purposes of this case and the answer, as the District Court carefully explained, is no. The rule that we sought to apply, to establish... Do you agree with the District Court that you... There's two parts of that. One is the District Court said the whole time the plaintiffs in this case have been arguing their palace, their panos plurality and you're aware of that as the defendants, the other side was aware of that, and you're aware of the fact that that's what I was ruling based on. That's a paraphrase, but is that a correct paraphrase of what the first part of that? Do you agree with the District Court that the entire time you were arguing the panos plurality, that was what you were relying on? Yes, Your Honor, and if you look at 20 ER 4613... Because as I recall, the District Court actually cited back to its answer on the second motion for summary judgment. I think it was your motion for summary judgment. Our second motion for summary judgment. The District Court denied it, but the District Court said in the course of doing that, I said it was a water of the United States and I relied on the fact that the panos plurality... Now, in the record, I'm looking at your argument that was made in support of it being... The heading is Temescal Creek is a water of the United States. Yes, Your Honor. And that's at ER 20 ER 4613. And your first main argument, obviously, is that it's a tributary. And then you say any such tributary that flows each intermittently, at least intermittently, is a water of the United States. And then you cite a bunch of Supreme Court cases. And you do cite Rapanos. Do you remember what part of Rapanos you cited to? Yes. Yes, Your Honor. No, that citation is not to the plurality. That citation is to the syllabus. No, we're going to keep going until we get to the plurality. But further on, we cite to the plurality on the next page, Your Honor. It has admitted that Temescal Creek is a tributary, which I think they did. And then if you go to the next page on that, you go on and you talk about the substantial nexus. It's at the very end when you say it's both a tributary and a substantial nexus. And then you do have a section that talks about the plurality. But how is it... I mean, you don't start with the plurality. The plurality is part of another discussion. How is this relying only on the the Rapanos plurality? You have the whole kitchen sink here. And it's not even the main part of it. I don't think there's a basis for us to say the district court was correct in saying that your argument was the Rapanos plurality, period. Respectfully, Your Honor, we disagree with that. Because again, if you look on page 20 ER 4614, we clearly state, we clearly cite the Justice Scalia plurality portions of Rapanos. And we say, we recite that a water of the United States includes waters that are, quote, relatively permanent, standing or continuously flowing bodies of water that connect to traditional navigable waters. See id at page 22. So you did cite the Rapanos plurality. You did cite to it and discuss it. But it's not the only argument. You were making the whole argument. You were substantial nexus, which you would agree is no longer the law after because you actually closed with the substantial nexus. And you also were making the tributary to the a the tributary argument. That's what you lead with, which is also no longer the law. So you were just making all the arguments, right? That's you see, I'm saying my my point isn't that you did not mention the Rapanos plurality anywhere. My point is, is that I don't know how the district court can say the defendants were on notice that that was your argument. You were arguing everything. No, Your Honor, because there never was a substantial nexus test. That was that was never the law. The law in Justice Kennedy's concurrence was a significant nexus, not a substantial nexus. It was an inartful use of words. But we clearly Justice Kennedy's argument on the fact that you accidentally said significant substantial nexus instead of instead of you said substantial nexus instead of significant nexus. Only in part, Your Honor. I mean, words matter. And that was the Supreme Court test. Well, let's let's move for a second to from what you argued, because I think it's clear here. You did not just argue the Rapanos plurality to when the district court actually ruled. What did the district court mention that would help us to know that the district court was relying on the plurality, the Rapanos plurality, as opposed to, say, the tributary test? Um, well, Justice Carter, Judge Carter was clear in in his order. He was clear, wasn't he? He says he said defendants facility is on page two of the order. He says defendants facility sits uphill from a road labeled either Temesco Canyon and Temesco Creek M-Dash. Under the plurality and the Rapanos plurality, a water of the United States. No, he didn't say that, did he? He said a tributary of the Santa Ana River and a water of the United States. The only rationale given in this order is that the tributary rationale. It seems the best reading of this is he adopts your your first argument, the tributary argument and goes with it. Your Honor, again, respectfully, we never had a tributary argument per se. It was always the Rapanos test. It must be relatively permanent water that is a tributary to water of the United States, a traditional navigable water. And of course, Corona Clay conceded that in its request for admission. You literally say, I'm going back now to what you said in your brief, any such tributary that flows at least intermittently. And Sackett and Rapanos say that intermittent flow alone is not enough. So that's not that you are relying on a tributary test, not some sort of Rapanos test in that portion on ER 4613. You may have other arguments, but I don't like this argument does not work. Again, again, Your Honor, the Rapanos test, as interpreted by the Moses case, which is controlling precedent for this three judge panel, says that waters that flow intermittently, the word intermittently has some confused meaning, I think, in the courts. And I think other cases have pointed this out. Clearly, a water that flows ephemerally, that doesn't qualify as relatively permanent under the Rapanos test. But Rapanos, Justice Scalia made clear in Rapanos that waters that flow for a portion of the year, i.e. intermittently, they don't flow every day of the year, but they flow continuously for part of the year, i.e. intermittently, are waters of the United States. That's the Rapanos plurality footnote seven. It's also what the Moses court said. The Moses court never said that a water that is a tributary to a traditional navigable water alone is a water of the United States. No, it did. It clearly says that at the front end of Moses. In fact, Moses reads like your classic, like, let's do belt and suspenders. It clearly says at the beginning of our Moses decision that a tributary is enough. Here, let me grab the language since you're saying that it's not a waste of time. But if you're going to misrepresent... Again, respectfully, I don't think I'm misrepresenting. The Moses case clearly said it was interpreting the Rapanos plurality rule. And it said, and the facts in Moses were, as the Ninth Circuit found and as were critical to the Ninth Circuit holding, that that water at issue in Moses flowed continuously for at least 60 days out of the year. It didn't flow for a good portion of the rest of the year. And it said that qualifies as a water of the United States. So Moses says, at the very end, it says that we have jurisdiction over stream because the Army Corps says so, even though the flow was intermittent. And then it goes on and it says, it says the Corps has issued regulations. We owe deference to those regulations, which obviously we don't anymore after a loop of right. And then under the definitions, it says that simply being a tributary of water is enough, being a tributary of water. And it says, we do not see how one can gainsay the fact that Teton Creek was at least a tributary. And then it drops footnote eight and it says, there can be little doubt that a tributary of waters of the United States is itself a water of the United States. In that context, Your Honor, and only that context, again, they're interpreting the Raponos plurality. And you yourself, Your Honor, when you were quoting that case, I mean, the fundamental foundation for that ruling is the word intermittent. It's not true they were interpreting that. I don't see them talking about the Raponos plurality at all in Moses yet. All they're doing at that point is they are talking about the agency's regulations. The court later on does acknowledge Raponos plurality and says that, you know, this is binding law, which of course it is. I want to switch gears just a little bit. So this case started out and we had both discharge and permit violation claims, right? Yes, Your Honor. Now we're at a point where we only have permit violation claims. Is that correct? You could interpret it that way. I mean, we say that the jury found that... Well, you dropped all... From the record, you dropped the discharge claims after the second appeal. Yes, if you characterize them that way, but we say they failed to... No, no, no, no. I don't want to be mushy about this. My understanding from the record is that the discharge claims got dropped and you proceeded in the second trial only on permit violation claims. Is that true or no? All the claims are permit violation claims. That's true. They do relate to discharge, however. So if these are all permit violation claims, do we even care about proving water of the United States? Is that even an element of a permit violation claim? If you look at Clean Water Act Section 505, which authorizes the citizen suit, it says that the courts have jurisdiction to enforce actions against any violation of an effluent limitation. The Clean Water Act then defines an effluent limitation as including any violation of an NPDES permit condition. So it's not, strictly speaking, an element of the claim. Right. So if that's true, then this whole thing we've been talking about, or what is and isn't, whatever the United States, does it even matter? That would be one potential interpretation. But of course, the Ninth Circuit and their... Which would let you get puddles. If you look at that interpretation, if there was a permit that covered a puddle, then you'd be back to puddles being covered, as long as it wasn't a discharge from the puddle, but it was just a permit related to a puddle. Well, of course, that permit would have been improperly issued and should have been challenged. Wouldn't that be kind of a challenge, a challenge to the permit itself, as opposed to a challenge to a violation of the permit, which is a citizen suit? Well, again, controlling precedent says that if you're going to challenge a permit requirement, you have to do that within the time and procedure provided for that, that you can't challenge a permit in the context of an ongoing enforcement action. Again, that's controlling precedent. What kind of permit are we talking about here? Because it's one thing if you go out and you seek a permit, but these are general permit conditions, is that correct? That's correct, Your Honor. So this is... So what they were alleged to have violated as a permit are just regulations. They're almost like regulations that have been passed by this governing entity, this California state law governing entity. It's not a permit in the sense of you think of yourself as going and getting a... applying for a permit and getting a permit, right? Like the individualized, like a license, like a driver's license type. That's not entirely true. It is true that it has some aspects that could be analogized to a regulation, as I understand your point. Say it again. I understand that, yes, the permit has aspects to which would make it an analogy to a regulation appropriate in some ways, but in some ways not. So the reason I'm asking this is if you accepted the argument that it doesn't have to be a water of the United States if it's just a challenge to violating a permit, those aspects... An entity could pass something covering puddles. It was clearly inconsistent with SACIT. And those puddles would be... You could bring a case like yours and you wouldn't have to... It'd be a way to get around the waters of the United States requirement as long as you only brought challenges that were permit related. Is that correct? No, that's not our argument. It's also not relevant to the facts here because, again, the district court found with more than adequate record that this is a relatively permanent water body connected to a traditional navigable water. Again, the panel that decided the first appeal... Where did the district court find that? It noted in the second summary judgment ruling this is water of the United States. The only argument, again, that was presented, if you look at the argument at 20 ER 4613 and 14, was, again, the Raponos plurality rule. It certainly... I understand that you disagree with that assertion, but we stand on it. But even if that's not true, it certainly was... It's beyond contest that we certainly argued that as a basis for it being a water of the United States. Under Supreme Court doctrine, Ninth Circuit doctrine, the burden then shifted to Corona Clay to come up with rebuttal evidence. Yeah, so that really gets to kind of the key issue because you did mention that the plurality. I don't dispute that. But if somebody makes A, B, and C arguments, three arguments, and you look at it as a defendant, you're like, well, they got us dead to rights on A and B under binding precedent. Is your position that you have to say, well, we dispute C even though it won't make a difference in the case and you waived it? Is that your position? I think that would be correct, yes. I mean, because we could win... What that would lead to was, that would lead to people making all kinds of arguments that made no difference to their case. Like, our briefs would be full of people. It also is very hard because you have to think of all the ways that you obviously lose on that issue. But maybe if it changed, you could win. You know what I'm saying? Our briefs would be full of irrelevant arguments all the time. Well, but of course, that's not the case here. The briefs wasn't full of irrelevant arguments. There were three specific arguments. And to the point that we made a Justice Kennedy concurrence argument, which I think that Your Honor is suggesting, Justice Kennedy's concurrence had an elaborate test, and we didn't mention any of it. Here's what makes your argument somewhat implausible. I think you must be a pretty good lawyer. And what was the case law in the Ninth Circuit pre-Sackett? Was it that the Rapanos plurality was the governing rule or that Kennedy's decision provided the governing rule? The answer is yes and yes. I mean, it was unanimous. But it included Kennedy's. I'm pretty sure it said that Kennedy's was. So why would you not argue the law in the Ninth Circuit in this case? Because proving the Justice Kennedy test, for one, it's not clear that the Justice Kennedy test even applies to a stream. Justice Kennedy's concurrence addressed a wetland, not a stream. Commentators have drawn different conclusions about whether Justice Kennedy's concurrence is even relevant to a stream. But setting that aside, assuming that it was, it's a difficult test to meet. As the Sackett majority pointed out, why it was reversed by the majority in Sackett. I mean, you have to prove that polluting Water A will have a significant effect on Water B in terms of its chemical, biological integrity. And that's a difficult showing to make. We would have had to show, to meet the Justice Kennedy test, we would have had to show that the sediment runoff from Corona Clay into Temascale Creek was going to have a significant effect on the Santa Ana environment. So as between tributary and the pluralities, the Raponos pluralities test and Kennedy's test, which is the easiest of those three to meet? The plurality test is certainly the most straightforward. It's easier than the tributary test? Well, again, Your Honor, respectfully, I don't think there ever was a tributary test. You thought the tributary was easier because you led with that argument. Well, again, we disagree. We say that it was Raponos, Raponos, Raponos, as the district court properly found. It seems like the district court may have thought the same thing because it's the only one that it actually explicitly mentions. Because, again, that's the argument that we made. And one other point I want to stress is the waivers, one, they had an obligation to come forward with evidence. That's Liberty Lobby, that's Zenith Radio, that's Supreme Court doctrine, it's case after case in front of the Ninth Circuit. When we came forward with evidence, an argument that was sufficient to prevail, we did come forward with evidence and argument that we met the Raponos plurality test. I mean, I understand the court to agree with me on that point. The burden shifted to them to present rebuttal evidence on that point because if they didn't, we would win on that grounds. And having failed to present evidence, as the district court properly found, they've waived it. And he wrote the sentence in the summary judgment order, Tennesco Creek is the water of the United States, because it hadn't been contested. And there was an additional waiver here that we haven't focused on, is the district court instructed the jury that Tennesco Creek is the water of the United States. There was no objection to that instruction. And at that point, failure to object, again, that's controlling circuit precedent under the Zhang case. And Federal Rule of Civil Procedure 51C, if you don't object to a jury instruction, you can't raise it later. I mean, it was instructed to be, the jury was instructed that it was the water of the United States, and for that reason, it wasn't tried, which rules out a 59A motion, because you can't have a new trial on issues that weren't tried. Our questions took you over time. Both parties have time now? All right. Thank you very much. Okay, thank you, Your Honor. I vote aye for your arguments today. The matter is submitted. We're in recess until tomorrow morning. All rise.
judges: NGUYEN, FORREST, VANDYKE